UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KAREN MCDERMOTT,<br><br>          Plaintiff,<br><br>  -against-<br><br>CAREALLIES, INC. and AMANDA CALVITTI,<br><br>          Defendants. | **2:20-cv-03496-KSH-CLW**<br><br>**OPINION AND ORDER** |

**Introduction**

This matter comes before the Court on the motion of plaintiff Karen McDermott ("Plaintiff") to remand this action to the Superior Court of New Jersey [D.E. 16]. Defendants CareAllies, Inc. ("CareAllies") and Amanda Calvitti ("Calvitti") (collectively, "Defendants") have opposed the motion [D.E. 17]; Plaintiff has filed a reply [D.E. 18]; and the Honorable Katharine S. Hayden has referred the motion to the undersigned. For the reasons stated below, Plaintiff's motion is GRANTED.

**Background**

Plaintiff initially brought this action in New Jersey Superior Court in February 2020. See D.E. 1, Exhibit A. Plaintiff's original complaint names one defendant, Qualcare, Inc. ("Qualcare") and alleges that after working for Qualcare for approximately six years, Plaintiff was unlawfully terminated under circumstances relating to her FMLA leave and subsequent claim for disability benefits. Id. at ¶¶ 7-16. The original complaint sounds in disability discrimination and retaliation under the New Jersey Law Against Discrimination (the "NJLAD"). Id. at ¶¶ 17-32.

The action was timely removed to this Court. D.E. 1. The Notice of Removal provides that CareAllies—not Qualcare—is Plaintiff's former employer, and therefore, the proper defendant

entity. Id. at ¶ 5(b). In the Notice of Removal, CareAllies asserted federal jurisdiction based on diversity of citizenship under 28 U.S.C. ¶ 1332(a); namely, that Plaintiff is a citizen of New Jersey; that CareAllies is a Delaware corporation with its headquarters and principal place of business in Texas; and that Qualcare's New Jersey corporate residence is irrelevant because Qualcare never employed Plaintiff. Id. at ¶¶ 5, 7, n.1, and Exhibits B, C, D.

 Before an answer was interposed, Plaintiff filed an Amended Complaint (the "Amended Complaint") as a matter of course, as authorized under FED R. CIV. P. 15(a)(1). D.E. 5; see FED. R. CIV. P. 15(a)(1); see, e.g., Granger v. Assocs. Abstract, 2010 U.S. Dist. LEXIS 155303, at *14 (D.N.J. Apr. 6, 2010) ("Under Rule 15(a), a party has a right to amend a complaint as a matter of course as to any party that has not answered."). The Amended Complaint differs from the original complaint in three respects, one of which is central to this motion. First, it proceeds against CareAllies rather than Qualcare. See generally Amended Complaint; id. at ¶ 9. Second, it adds a breach of contract claim. Id. at ¶¶ 38-42. Third—and where things get procedurally thorny—it names Calvitti as a defendant. Calvitti is alleged to be Plaintiff's former manager "and an aider and abettor of Defendant CareAllies['] discrimination against Plaintiff." Id. at ¶ 6.

 The addition of Calvitti complicates matters because Calvitti, like Plaintiff, is a New Jersey resident. Id. at ¶¶ 4, 7. As noted, the Notice of Removal claims federal jurisdiction based on 28 U.S.C. § 1332(a), which requires "complete diversity," i.e., that "in cases with multiple plaintiffs or multiple defendants, no plaintiff be a citizen of the same state as any defendant." Zambelli Fireworks Mfg. Co. v. Wood, 592 F.3d 412, 419 (3d Cir. 2010) (citing cases).[1] Thus, Calvitti's presence arguably destroys the basis for federal jurisdiction over this matter.

---

[1] Section 1332(a) also requires an amount in controversy exceeding $75,000. The Notice of Removal provides that "[t]he entire amount in controversy, while not specifically enumerated in Plaintiff's complaint, appears to contemplate an amount exceeding the sum or value of $75,000." D.E. 1 at ¶ 6.

Shortly after Plaintiff filed the Amended Complaint, Defendants moved to compel arbitration. D.E. 7. The Court administratively terminated that motion pending decision on the present motion. D.E. 15.

**Analysis**

    **Analytical Framework**

The key question in deciding this motion presents itself at the very outset; viz., what is the correct framework in addressing how Plaintiff's post-removal addition of Calvitti impacts the question of remand?

Plaintiff's argument is primarily grounded in fraudulent joinder, a decidedly plaintiff-friendly doctrine which provides that "[w]hen a non-diverse party has been joined as a defendant, then in the absence of a substantial federal question[2] the removing defendant may avoid remand only by demonstrating that the non-diverse party was fraudulently joined"; i.e., that "there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendants or seek a joint judgment." In re Briscoe, 448 F.3d 201, 217 (3d Cir. 2006) (quoting Batoff v. State Farm Ins. Co., 977 F.2d 848, 851 (3d Cir. 1992)). Defendants, meanwhile, primarily contend that the Court should apply 28 U.S.C. §1447(e),[3] which states that "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e). In analyzing joinder under section § 1447(e), courts in the Third Circuit "regularly apply the factors set forth by the United States Court of Appeals for the Fifth Circuit in Hensgens v. Deere & Co., 833 F.2d

---

[2] The claims in this action arise under state and common law. See generally Amended Complaint.

[3] While Defendants argue that § 1447(e) provides the proper analysis, they also address fraudulent joinder.

1179 (5th Cir. 1987), cert. denied, 493 U.S. 851, 110 S. Ct. 150, 107 L. Ed. 2d 108 (1989)"; i.e., "(1) the extent to which the purpose of the amendment is to defeat federal jurisdiction; (2) whether plaintiff has been dilatory in asking for amendment; (3) whether plaintiff will be significantly injured if amendment is not allowed; and (4) any other factors bearing on the equities." City of Perth Amboy v. Safeco Ins. Co. of Am., 539 F. Supp. 2d 742, 752-53 (D.N.J. 2007) (citing Hensgens, 833 F.2d at 1182 and collecting cases); report and recommendation adopted, 539 F. Supp. 2d 742 (D.N.J. 2008).[4]

The parties' dispute over how to address this motion is for good reason. As will be discussed, Calvitti was not fraudulently joined; conversely, the Hensgens factors appear to favor Defendants. Thus, this threshold question is also a dispositive one. Moreover, both arguments carry water. Indeed, there is a sharp split of opinion as to which standard applies in the specific situation before the Court—i.e., where post-removal, a plaintiff amends her complaint as of right to add a non-diverse party—with considerable authority on both sides of the ledger. As noted in Sussman v. Capital One, N.A., 2014 U.S. Dist. LEXIS 151866 (D.N.J. Oct. 24, 2014):

> [w]hen a claimant amends his complaint as a matter of right under Rule 15(a) of the Federal Rules of Civil Procedure to join non-diverse parties who would destroy diversity jurisdiction, some debate exists between district courts as to whether Section 1447(e)—which permits the court to deny joinder where a party seeks to add parties that would destroy diversity jurisdiction—still applies. Most courts and commentators appear to embrace the applicability of Section 1447(e) under such circumstances. Some courts, however, suggest that the fraudulent joinder analysis . . . applies to determine whether parties, who are added to a complaint that has been amended post-removal, are improperly joined.

---

[4] It should be noted that § 1447(e) and fraudulent joinder may dovetail to a certain degree, as some "[c]ourts have . . . recognized that the fraudulent joinder doctrine may be an appropriate element of the 1447(e) analysis." Neuner v. Samost, 2012 U.S. Dist. LEXIS 167084, at *6 (D.N.J. Nov. 26, 2012) (citing cases). However, the majority view appears to be that "the standard applied to an assertion of fraudulent joinder . . . differs from that . . . under 28 U.S.C. § 1447(e)." Route 27, LLC v. Getty Petroleum Mktg., 2011 U.S. Dist. LEXIS 34375, at *12 n.4 (D.N.J. Mar. 29, 2011) (citing cases).

4

Id. at *5-7 (collecting cases on both sides of dispute; citations omitted). Ultimately, the Court will conclude that fraudulent joinder provides the proper framework, and therefore, because Calvitti's joinder was not fraudulent, that remand is proper.[5]

---

[5] Before reaching this question, the Court must contend with another analytical quandary. There exists a longstanding principle that "[g]enerally, federal diversity jurisdiction is determined at the time of removal." Perth Amboy, 539 F. Supp. 2d at 752 (citing New Rock Asset Partners, LP v. Preferred Entity Advancements, Inc., 101 F.3d 1492, 1503 (3d Cir. 1996)). Taken to its logical extreme, this would seem to foreclose any substantive jurisdictional analysis, since no resident defendant is named in the complaint that was operative at the time of removal.

However, a distinction has emerged between post-removal amendments that change the nature of the claims asserted at the time of removal (to which the above-referenced principle applies), and post-removal joinder of new parties (to which it does not). As explained in O'Keefe v. Mercedes-Benz United States, LLC, 214 F.R.D. 266 (E.D. Pa. 2003):

> a plaintiff's attempt to amend his complaint post-removal by reducing the amount in controversy is dealt with differently th[a]n when the plaintiff amends his complaint to join a non-diverse party . . . . When a party reduces the amount in controversy, he is altering a claim that the court has already established subject matter jurisdiction over. In contrast, when the complaint is amended to assert a new claim against a non-diverse party by joinder or third-party practice, the court must analyze it[]s subject matter jurisdiction over the new claim because it was not present at the time of removal.

Id. at 281 (citations omitted). Sussman follows suit. The defendant there opposed a fraudulent joinder analysis in connection with a non-diverse defendant who was joined post-removal, citing the statement in Cavallini v. State Farm Mut. Auto Ins. Co., 44 F.3d 256, 264 (5th Cir. 1995) that "[a] complaint amended post-removal cannot divest a federal court of jurisdiction." 2014 U.S. Dist. LEXIS 151866, at *14 n.3. The court distinguished Cavallini as follows:

> in Cavallini, at issue was not the addition of a non-diverse defendant, but rather the addition of factual allegations against a non-diverse party who was already a defendant at the time of removal. Construing Cavallini to mean that the court cannot consider the post-removal joinder of parties that would defeat subject matter jurisdiction flies in the face of explicit federal statutes stating the contrary.

Id. (citing 28 U.S.C. 1447(e) and quoting 28 U.S.C. 1447(c)) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

For these reasons, the Court construes the directive to determine jurisdiction based on the complaint at the time of removal to require, on the one hand, consideration of the allegations as pled at the time of removal; and on the other, a jurisdictional assessment of the parties named in the Amended Complaint. Consequently,

Mayes v. Rapoport, 198 F.3d 457 (4th Cir. 1999) is the leading case supporting a § 1447(e)/Hensgens analysis. In a frequently-cited footnote, the Fourth Circuit explains that in circumstances such as here, "§ 1447(e) conflicts with Rule 15(a), which permits a plaintiff to amend his complaint without leave of court 'before a responsive pleading is served.'" Id. at 462 n.11 (quoting Fed. R. Civ. P. 15(a)).[6] The conflict arises "because, if the plaintiff can add a nondiverse defendant without the district court exercising its discretion over whether the defendant should be joined, then, under § 1447(e), the district court would be forced to remand the case without determining the propriety of joinder." Id.; see also Mackey v. J.P. Morgan Chase Bank, N.A., 786 F. Supp. 2d 1338, 1340 (E.D. Mich. 2011) ("[T]here is 'an inherent tension between the right to amend a complaint once as a matter of course under Rule 15(a) and the discretion conferred by § 1447(e),' as Rule 15(a) seemingly leaves no role for the court to play in determining whether a non-diverse defendant should be joined as a party.") (quoting Collins v. National General Insurance Co., 2010 U.S. Dist. LEXIS 113325, 2010 WL 4259949, at *1 (E.D. Mich. Oct. 25, 2010) and citing J. Lewis Cooper Co. v. Diageo North America, Inc., 370 F. Supp.2d 613, 618 (E.D. Mich. 2005)). Mayes answers that a cohesive reading of Rules 15(a), 19, and 21, along with § 1447(e), "resolves any doubts over whether the district court has authority to pass upon any attempts -- even those for which the plaintiff needs no leave of court -- to join a nondiverse defendant" and concludes that "a district court has the authority to reject a post-removal joinder that implicates 28 U.S.C. § 1447(e), even if the joinder was without leave of court." Mayes, 198 F.3d at 462 n.11 (citing authorities).

---

on this motion the Court will disregard Plaintiff's breach of contract claim, which was not pled in the original complaint.

[6] Mayes recited the pre-2009 amendment language of Rule 15(a). It remains true that a plaintiff may amend her complaint as a matter of course before a responsive pleading is served. See, e.g., Granger, supra.

Bevels v. American States Ins. Co., 100 F. Supp. 2d 1309 (M.D. Ala. June 20, 2000) adds a practical consideration:

> [i]f the rule were to the contrary, that is, if a plaintiff could destroy diversity jurisdiction merely by naming a non-diverse defendant after removal, without seeking leave of the court, . . . a plaintiff whose only motive was to avoid the federal forum could do so simply by amending the complaint once it was removed.

Id. at 1313. For these reasons, these (and other) courts hold that "a party may not employ Rule 15(a) to interpose an amendment that would deprive the district court of jurisdiction over a removed action"; in other words, "[Section] 1447(e) trumps Rule 15(a)." Ascension Enters. v. Allied Signal, 969 F. Supp. 359, 360 (M.D. La. 1997) (quoting 6 Wright, Miller & Kane, Federal Practice & Procedure: Civil, § 1447 at 562 (2d Ed. 1990)). Or further sharpened, where, post-removal, a plaintiff has joined a defendant whose presence destroys diversity jurisdiction, courts should apply the Hensgens factors on a motion to remand, even if such joinder was permitted as of right under Rule 15(a)(1).

Other courts disagree and maintain that, while § 1447(e) and Hensgens apply where a party seeks to add a defendant, in circumstances (like those here) where the non-diverse defendant was joined as a matter of right, the § 1447(e)/Hensgens analysis is improper, and joinder is disallowed—and therefore, remand denied—only if the newly-added party was fraudulently joined. See, e.g., Brennerman v. Guardian News & Media Ltd., 2015 U.S. Dist. LEXIS 172429, at *8-9 (D. Del. Dec. 29, 2015) ("The Third Circuit has not yet resolved this dispute," but "[d]istrict courts within the Third Circuit have distinguished between situations where the court has discretion to permit joinder, and those . . . wherein the complaint is amended as a matter of right. Those courts have determined that when a pleading is amended as a matter [o]f right, the . . . argument should be focused solely on fraudulent joinder.") (citations omitted), report and

7

recommendation adopted, 2016 U.S. Dist. LEXIS 42923 (D. Del. Mar. 30, 2016); O'Keefe v. Hess Corp., 2010 U.S. Dist. LEXIS 90470, at *30-31 n.9 (D.N.J. Sep. 1, 2010) ("Following removal, requests to amend pleadings that result in the destruction of federal jurisdiction normally require consideration of numerous equitable factors (referred to as the Hensgens factors). However, when the amendment of a pleading is made as of right, . . . the court does not a consider the merits of the amendment. Thus, Defendants properly focus their argument solely on fraudulent joinder.") (citations omitted), report and recommendation adopted, 2010 U.S. Dist. LEXIS 110582 (D.N.J. Oct. 15, 2010); cf. Confessore v. Agco Corp., 2015 U.S. Dist. LEXIS 93851, at *13-14 n.4 (D.N.J. July 20, 2015) ("[T]he fraudulent joinder analysis is not appropriate here because that standard applies in circumstances when a party has already been joined to an action. Since Plaintiff is . . . moving to add [a non-diverse party] as a defendant in this case, the proper analysis is under § 1447(e).") (citation omitted); Route 27, LLC v. Getty Petroleum Mktg., 2011 U.S. Dist. LEXIS 34375, at *9, 12 n.4 (D.N.J. Mar. 29, 2011) (rejecting § 1447(e) analysis because "section 1447(e), by its own terms, . . . encompasses only those amendments that seek[ ] to join additional defendants" and clarifying that "the standard applied to an assertion of fraudulent joinder under the diversity statute differs from that applicable to a motion to amend under 28 U.S.C. § 1447(e), where the plaintiff seeks to add, after removal, additional defendants whose inclusion would defeat diversity.") (citing cases; emphasis and quotation marks removed); Midthassel v. ARAMARK Corp., 2010 U.S. Dist. LEXIS 59324, at *13 (D.N.J. June 15, 2010) ("'[F]raudulent joinder . . . can only be claimed if the alleged fraudulently joined party has already been joined.' [However], where Plaintiff is seeking joinder, the proofs necessary to establish fraudulent joinder have no applicability.") (quoting Conover v. United Parcel Service, 2006 U.S. Dist. LEXIS 88438, at *3 n.2 (D.N.J. Dec. 7, 2006) and applying § 1447(e) analysis to motion to amend); Perth Amboy, 539

8

F. Supp. 2d at 754 n.2 ("Had Plaintiff simply filed an amended pleading [as of right] including claims against [the non-diverse defendant], the appropriate analysis would be one of fraudulent joinder . . . .") (citing Conover); Conover, 2006 U.S. Dist. LEXIS 88438, at *3 nn.2-3 ("This is not a case of fraudulent joinder, which can only be claimed if the alleged fraudulently joined party has already been joined. . . . [After removal, plaintiff] could have simply filed his amended Complaint without leave of the Court, which would have implicated the fraudulent joinder analysis.").

For several reasons, the Court agrees with the second line of cases; i.e., that fraudulent joinder, rather than 1447(e)/Hensgens, provides the proper analysis here. First is the text of § 1447(e), which reads: "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e) (emphasis added). This provision is expressly limited to instances where a plaintiff seeks to add a non-diverse defendant—to the exclusion, therefore, of instances where such joinder already has occurred as a matter of right.

As aptly explained by Magistrate Judge Jeremiah J. McCarthy in Buffalo State Alumni Ass'n v. Cincinnati Ins. Co., 251 F. Supp. 3d 566 (W.D.N.Y. 2014), report and recommendation adopted, 251 F. Supp. 3d 566, 2017 U.S. Dist. LEXIS 68071,[7]

> 28 U.S.C. §1447(e) applies only where a plaintiff "seeks to join additional defendants" (emphasis added). We give the words of a statute their ordinary, contemporary, common meaning, absent an indication Congress intended them to bear some different import. To "seek" means "to ask." . . . Here, however, plaintiffs did not "seek" leave to amend under Rule 15(a)(2). Instead, they amended "as of course" under Rule 15(a)(1), which does not require leave of court.

---

[7] As here, Buffalo State Alumni involved a motion to remand where, following removal, the plaintiffs amended their complaint to add a non-diverse defendant. See 251 F. Supp. 3d at 572.

Id. at 575 (citations and quotation marks omitted); see also Wallace v. Dolgen Midwest, LLC, 2013 U.S. Dist. LEXIS 18880 (N.D. Ohio Feb. 12, 2013), at *5-6 ("[U]nder the circumstances of this case [i.e., where the plaintiff added a non-diverse party as of right], plaintiff was not required to seek joinder (i.e., to move for it) as he had the right under Rule 15(a)(1)(A) to amend his pleading once as a matter of course. Therefore, . . . Section 1447(e) offers defendants no refuge.") (rejecting § 1447(e) approach in favor of fraudulent joinder).[8]

Buffalo State Alumni offers two additional pieces of support for the notion that fraudulent joinder is the proper analysis here. First, as stated above, some courts that opt for a § 1447(e) approach do so out of concern for a plaintiff employing Rule 15(a) to manipulate the forum rules by "interpos[ing] an amendment that would deprive the district court of jurisdiction over a removed action." Ascension Enters., 969 F. Supp. at 360 (quoting Wright, Miller & Kane, § 1447 at 562). This is indeed a valid concern. Acknowledging the potential problem, Judge McCarthy provides this cogent response:

> policy arguments come into play only to the extent that [language] is ambiguous. There is no ambiguity in Rule 15(a)(1): it does not limit the types of pleading amendments that may be made "as of course", and the court may not rely on "policy" to read into the Rule an exception for amendments which defeat jurisdiction. While Rule 15(a) gives the court extensive discretion to decide whether to grant leave to amend after the time for amendment as of course has passed . . . a plaintiff's right to amend the complaint once as of right may be described as "absolute". Accordingly, 28 U.S.C. §1447(e) cannot apply to defeat joinder of a party by amendment under Rule 15(a)(1), since [t]he court has no discretion to deny a timely amendment made as a matter of course. . . . I see nothing inherently unfair in allowing plaintiffs to join a party by amendment "as of course" in order to obtain remand.

---

[8] To this point, Defendants' opposition repeatedly invokes § 1447(e) as applicable to situations where a party "seeks to" add a non-diverse defendant. See generally D.E. 17.

10

251 F. Supp. 3d at 575-77 (citations and quotation marks omitted) (citing, e.g., Delfosse v. Continental Cas. Co., 2011 U.S. Dist. LEXIS 71085, 2011 WL 2601277, *3 (E.D. Wis. 2011)) ("[I]t is obvious that the addition of the new parties is motivated at least partly by the Plaintiff's desire to remain in state court. Forum shopping has a bad name, but in reality it happens all the time. After all, removal to federal court is itself a form of forum shopping. Within bounds, there is nothing to prevent attorneys from using the procedural rules to secure the forum of their choice"). Simply put, policy concerns cannot overcome Rule 15(a)(1)'s unambiguous grant of permission for a plaintiff to timely amend her complaint as of right, even if the upshot is avoiding § 1447(e) scrutiny.

Next, as noted, cases which opt here for a § 1447(e) analysis commonly note the tension, under that approach, between the statute and Rule 15(a)(1). See Mayes, Mackey, supra; Bevels, 100 F. Supp. 2d at 1312; Ascension Enters., 969 F. Supp. at 360. Judge McCarthy again answers the call, writing that "I fail to see how [certain courts] can find a 'tension' between 28 U.S.C. §1447(e) and Rule 15(a)(1) without first interpreting the text of either provision. That should be the court's initial inquiry, both as to the statute and to the Rule," and proceeding to analyze § 1447(e) and Rule 15(a)(1) as described above. Buffalo State Alumni, 251 F. Supp. 3d at 574-76 (citing authorities; quotation marks omitted).

The principle that emerges is this: while some courts have sought to resolve the tension between § 1447(e) and Rule 15(a)(1) by "insist[ing] that a plaintiff must satisfy the standards of § 1447(e) in order to join a non-diverse defendant following removal, rather than achieving this result through the liberal amendment provisions of Rule 15(a)," Mackey, 786 F. Supp. 2d at 1340 (citing cases; quotation marks omitted), this purported resolution is, in truth, better described as a mandate that the statute prevails over the Rule—as flatly stated by Ascension Enters., "[Section]

1447(e) trumps Rule 15(a)." 969 F. Supp. at 360. To declare one conflicting provision the victor over another hardly amounts to a resolution between the two.

As alluded to in Buffalo State Alumni though, a genuine resolution is available. That is, if Rule 15(a)(1) and § 1447(e) are read, as they must be, according to their plain language—i.e., respectively, (i) that under certain circumstances a plaintiff may amend her complaint as of right; and (ii) that where a party seeks (that is, requests leave to) join defendants, a court may deny joinder or permit joinder and remand to State court—then there is no conflict at all. The Rule applies in one situation, the statute in another. There is no tension to be resolved in the first instance, since there is no overlapping situation where both provisions come into play; the section of the Venn diagram containing both Rule 15(a)(1) and § 1447(e) is empty.[9] Thus, the approach embraced here works best for another reason: in considering two possible analytical frameworks, one which results in a conflict and one which does not, it seems far more sensible to adopt the latter.[10]

---

[9] Additionally, if Section 1447(e) applies in situations such as this, a clash results between it and Section 1447(c)'s statement that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." First, Section 1447(e)'s directive to remand arguably would be duplicative of Section 1447(c). Further, Section 1447(e)'s option to deny joinder seems to go beyond what is permitted by Section 1447(c) (i.e., only remand). These issues are resolved if Section 1447(e) is read, as suggested here, to apply strictly to instances involving applications to add a party post-removal.

[10] It bears mention that Buffalo State Alumni, and certain other courts, have stated that "[t]he doctrine of fraudulent joinder . . . is legally inapplicable when, as here, a nondiverse party is added after removal." Buffalo State Alumni, 251 F. Supp. 3d at 573 (quoting Hosein v. CDL West 45th Street, LLC, 2013 U.S. Dist. LEXIS 130030, 2013 WL 4780051, *3 (S.D.N.Y. 2013)). However, this principle appears not to have been widely adopted by courts in this circuit, and indeed is implicitly—but directly—contradicted by the numerous cases that apply a fraudulent joinder analysis to defendants joined after removal. See supra; see also Neuner, 2012 U.S. Dist. LEXIS 167084, at *6-9 and n.1 (invoking fraudulent joinder where non-diverse defendant was added post-removal, and criticizing above reasoning as being "premised on the potentially erroneous assumption that the district court has the opportunity to determine whether joinder was appropriate in the first instance. That assumption breaks down, however, where the complaint was amended as of right, without leave of court, under Federal Rule of Civil Procedure 15(a).") (citations omitted).

Finally, the Court returns to the words of the Third Circuit that "[w]hen a non-diverse party has been joined as a defendant, then in the absence of a substantial federal question the removing defendant may avoid remand only by demonstrating that the non-diverse party was fraudulently joined." Briscoe, 448 F.3d at 217; Batoff, 977 F.2d at 851 (emphasis added). As above, these words must be taken mean what they say, which is that in the present circumstance, the only way for Defendants to avoid remand is to demonstrate fraudulent joinder. This is to the exclusion of avoiding remand by way of a § 1447(e)/Hensgens analysis, which is of no relevance where a non-diverse defendant has been joined, and therefore of no avail to Defendants. See Wallace, supra, (where non-diverse party added as of right, "Section 1447(e) offers defendants no refuge").

For the reasons stated, the Court will assess the question of remand under the fraudulent joinder framework.

**Fraudulent Joinder**

Having reached this point in the analysis, the Court now must address whether Calvitti was fraudulently joined. Defendants

> carr[y] a heavy burden of persuasion in making this showing. . . . [F]or removal statutes are to be strictly construed against removal and all doubts should be resolved in favor of remand.
>
> Joinder is fraudulent where there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendants or seek a joint judgment. But, if there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court. . . .
>
> In evaluating the alleged fraud, the district court must focus on the plaintiff's complaint at the time the petition for removal was filed. In so ruling, the district court must assume as true all factual allegations of the complaint. It also must resolve any uncertainties

13

> as to the current state of controlling substantive law in favor of the plaintiff.

Briscoe, 448 F.3d at 217 (quoting Batoff, 977 F.2d at 851-52); see also Batoff, 977 F.2d at 852 (the "standard by which to define whether a claim is legitimate in a jurisdictional analysis [is] whether a claim is 'wholly insubstantial and frivolous'") (quoting Lunderstadt v. Colafella, 885 F.2d 66, 70 (3d Cir. 1989)).

As will prove relevant here, the already solicitous

> inquiry into the validity of a complaint triggered by a motion to dismiss under Rule 12(b)(6) is more searching than that permissible when a party makes a claim of fraudulent joinder. Therefore, it is possible that a party is not fraudulently joined, but that the claim against that party ultimately is dismissed for failure to state a claim upon which relief may be granted.

Batoff, 977 F.2d at 852. With these guidelines in mind, the Court will conclude below that, for purposes of this motion, that Plaintiff has adequately pled two claims against Calvitti,[11] and therefore, that Calvitti was not fraudulently joined.[12]

To briefly summarize Plaintiff's allegations:[13] in 2017 Plaintiff had a disability that required her to take FMLA leave. In November of that year, Defendants, through Calvitti (who

---

[11] For the reasons stated above, the Court does not assess Plaintiff's breach of contract claim.

[12] The Court notes Defendants' argument that Plaintiff's claims are baseless because they are subject to an arbitration agreement entered into between Plaintiff and CareAllies. This factor does not disturb the Court's conclusion, since courts encountering "the issue of whether an arbitration agreement between a plaintiff and a non-diverse defendant renders the joinder of the non-diverse defendant fraudulent have uniformly concluded that the existence of an arbitration agreement 'does not yield the conclusion that Plaintiff has failed to state a colorable basis for a claim.'" Cobalt Mining, LLC. v. Bank of Am., N.A., 2008 U.S. Dist. LEXIS 19300, 2008 WL 695887 at *3 (W.D. Ky. Mar. 12, 2008) (quoting Koetters v. Ernst & Young, LLP, 2005 U.S. Dist. LEXIS 45224, 2005 WL 1475533, *4 (E.D. Ky June 21, 2005) and citing cases). Although the arbitration agreement here is alleged to have been entered into by Plaintiff and a diverse defendant, the stated rationales for this principle apply with equal force under the present circumstances. See id. (citing authorities and providing multiple reasons for this proposition).

[13] Aside from the allegations against Calvitti and the breach of contract claim, the original and amended complaints are essentially identical. For consistency of reference, the Court will refer to the Amended Complaint.

was Plaintiff's manager), wrote to Plaintiff to (i) advise that Plaintiff's FMLA leave had expired; (ii) inquire if Plaintiff required a workplace accommodation; and (iii) assure Plaintiff that she would not be terminated if she had a pending or approved claim for disability benefits. Plaintiff then applied for, and was granted, a continuation of her disability benefits. Defendants then terminated Plaintiff via letter sent by Calvitti while Plaintiff's benefits were still active. See Amended Complaint at ¶¶ 6, 13-18.

Plaintiff's first claim sounds in disability discrimination under the NJLAD and alleges that Calvitti aided and abetted such discrimination. Id. at ¶¶ 20-28. A claim for disability discrimination grounded in wrongful discharge requires a plaintiff to show: "(1) that plaintiff is in a protected class; (2) that plaintiff was otherwise qualified and performing the essential functions of the job; (3) that plaintiff was terminated; and (4) that the employer thereafter sought similarly qualified individuals for that job." Victor v. State, 203 N.J. 383, 409 (citing Clowes v. Terminix Int'l, Inc., 109 N.J. 575, 596-97 (1988)). Of note, "individual liability of a supervisor for acts of discrimination . . . can only arise through the [NJLAD's] 'aiding and abetting' mechanism." Cicchetti v. Morris Cty. Sheriff's Office, 194 N.J. 563, 594 (2008) (quoting N.J.S.A. 10:5-12(e) and citing Herman v. Coastal Corp., 348 N.J. Super. 1, 27-28 (App. Div. 2002)). Aiding and abetting liability requires that

> (1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; [and] (3) the defendant must knowingly and substantially assist the principal violation.

Velez v. Delight, 2015 U.S. Dist. LEXIS 133107, at *10-11 (D.N.J. Aug. 31, 2015) (quoting Tarr v. Ciasulli, 181 N.J. 70, 84 (2004) and citing cases).

Turning first to the underlying disability discrimination framework, Plaintiff has alleged a disability, which qualifies her as a member of a protected class. Amended Complaint at ¶¶ 13, 22; see, e.g., Apatoff v. Munich Re Am. Servs., 2014 U.S. Dist. LEXIS 106665, at *42 (D.N.J. Aug. 1, 2014) ("A plaintiff is in a protected class if she either 'has a disability or is perceived by the employer as disabled.'") (quoting Thurston v. Cherry Hill Triplex, 941 F. Supp. 2d 520, 535 (D.N.J. 2008)). She likewise alleges that she was qualified and performing the essential responsibilities of her job, and that she was terminated. See Amended Complaint at ¶¶ 11-12, 18, 23.

Plaintiff notably makes no mention of the prima facie requirement that her employer later sought similarly qualified individuals for her job. To be sure, were this a motion to dismiss, Plaintiff's failure to allege a prima facie element likely would result in dismissal. But as discussed, the benchmark here is considerably lower than that triggered by Rule 12(b)(6). Plaintiff's failure to plead this element does not render her discrimination claim "wholly insubstantial and frivolous" or as lacking a "reasonable basis in fact or colorable ground supporting the claim against the joined defendant." See Batoff, supra; see, e.g., Taylor Newman Cabinetry, Inc. v. Classic Soft Trim, Inc., 2010 U.S. Dist. LEXIS 125557, at *5 (M.D. Fla. Nov. 29, 2010) (rejecting argument that defendant was fraudulently joined in light of failure to show prima facie case, because to find joinder non-fraudulent, "[t]he Court need only determine that there is a possibility that the state law might impose liability on a resident defendant under the circumstances alleged in the complaint") (citing Crowe v. Coleman, 113 F.3d 1536, 1542 (11th Cir. 1997)).[14]

---

[14] Indeed, Defendants attack Plaintiff's allegations as conclusory, citing the familiar Iqbal and Twombly standards relevant to a motion to dismiss. These arguments are to no avail as applied to fraudulent joinder.

16

As to Calvitti's alleged aiding and abetting, Plaintiff alleges that Calvitti "knowingly gave substantial assistance or encouragement" to CareAllies' conduct, due to which Plaintiff was damaged. Amended Complaint at ¶¶ 19, 24, 28. As above, Plaintiff does not expressly plead the prima facie element that Calvitti was "generally aware of h[er] role as part of an overall illegal or tortious activity." See Velez, supra. Likewise as above, however, considering Plaintiff's minimal burden on this motion, because Calvitti is alleged to have sent the initial correspondence as well as the termination notice which, according to Plaintiff, directly contradicted the former, it may be inferred for present purposes that this element is satisfied. As a result, for purposes of this motion, Plaintiff has alleged a colorable aiding and abetting discrimination claim against Calvitti.[15]

Plaintiff also sufficiently alleges retaliation against Calvitti. Unlike discrimination, NJLAD retaliation may be directly asserted against an individual defendant. See N.J.S.A. 10:5-12(d) (making it unlawful "for any person to take reprisals against any person" due to the latter's protected activities) (emphasis added); see, e.g., Hurley v. Atl. City Police Dep't, 1998 U.S. Dist. LEXIS 12742, at *37-38 (D.N.J. May 28, 1998) (rejecting argument that individual employees cannot be liable for retaliation under the NJLAD).[16] To state a claim for retaliation under the NJLAD, a plaintiff must show that (1) she was in a protected class; (2) she was engaged in protected activity known to the employer; (3) she was thereafter subjected to an adverse employment consequence; and (4) there is a causal link between the protected activity and the adverse employment consequence. Victor, 203 N.J. at 409.

---

[15] Defendants seek to analogize this case with Sussman, which is readily distinguishable in that the non-diverse defendant there was merely made aware of the plaintiff's medical condition and desire to return to work; unlike here, there were no allegations in Sussman that this defendant "performed wrongful acts that created injury . . . or knowingly or substantially assisted in the principal violation." See Sussman, 2014 U.S. Dist. LEXIS 151866, at *17-18.

[16] Plaintiff also alleges that Calvitti aided and abetted CareAllies' retaliation, but the Court need not reach this issue in light of Plaintiff's direct retaliation claim against Calvitti.

Plaintiff alleges that she belonged to a protected class and engaged in a protected activity (i.e., having a disability and taking medical leave) and that she suffered an adverse action (i.e. being terminated). See Amended Complaint at ¶¶ 13, 16, 18, 30, 31; see, e.g., Boles v. Wal-Mart Stores, Inc., 2014 U.S. Dist. LEXIS 41926, at *22 (D.N.J. Mar. 26, 2014) ("[T]he requesting and taking of medical leave are protected activities under the NJLAD."). Plaintiff also alleges a causal link between the protected activity and Plaintiff's termination, Amended Complaint at ¶ 33, which, while sparse, suffices for present purposes: Plaintiff's termination occurring while she was out on disability after being assured three months prior that her job was conditionally safe, sufficiently suggests retaliatory circumstances necessary to support this claim. See, e.g., Marra v. Phila. Hous. Auth., 497 F.3d 286, 302 (3d Cir. 2007) (plaintiff may rely on a "broad array of evidence" to demonstrate causation) (quoting Farrell v. Planters Lifesavers Co., 206 F.3d 271, 286 (3d Cir. 2000)). Plaintiff's retaliation claim against Calvitti therefore passes muster for purposes of this motion.

**Conclusion**

For the reasons stated above, Plaintiff's motion to remand [D.E. 16] is GRANTED. This action shall be remanded to the Superior Court of New Jersey, Law Division, Union County.

Dated: November 30, 2020

> */s/ Cathy L. Waldor*
> Cathy L. Waldor, U.S.M.J